# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| EFRAIN TORRES, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br>   vs.<br><br>AFNI, INC.,<br><br>           Defendant. | Case No.: 18-cv-1<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.    Plaintiff Efrain Torres is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5.    Defendant Afni, Inc. ("Afni") is a debt collection agency with its principal offices located at 404 Brock Drive, Bloomington, Illinois 61701.

6.    Afni is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Afni is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. Afni is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about February 7, 2017, Afni mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt that Afni was attempting to collect was incurred for telecommunications services used only for personal, family or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication that Defendant sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

14. Exhibit A contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. We may furnish information about your account to the credit bureaus. This is an attempt to collect a debt. Any information obtained will be used for that purpose. This letter is from a debt collector.

Exhibit A.

15. The above language in Exhibit A contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer, which discloses the statutorily mandated 30-day validation period. 15 U.S.C. § 1692g.

16. If Exhibit A was actually mailed on February 7, 2017, it would have been received on or after February 10, 2017.

17. If Exhibit A was received on February 10, 2017, the consumer would have until March 12, 2017 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

18. Exhibit A also contains the following settlement offer:

> This account has been placed with our agency for collection. We are requesting your assistance in resolving this matter. We are willing to accept $224.98, to resolve your account. Once you pay this discounted amount, your account will be closed and marked settled in full with Afni, Inc. and AT&T MOBILITY.
>
> **This offer is valid until 03-24-2017. Afni is not obligated to renew this offer.**

Exhibit A.

19. The above offer requires that the consumer's payment be received by March 24, 2017. Exhibit A.

20. The above offer also states that "Afni is not obligated to renew this offer." Exhibit A.

21. Any consumer, unsure whether a payment received after March 24, 2017 would actually settle the debt, would feel compelled to allow for an extra two or three days for mailing and Afni processing to ensure they were able to take advantage of the settlement offer in Exhibit A and that the payment would not be processed as a partial payment on the full balance.

22. Thus, any consumer who wished to take advantage of the settlement offer in Exhibit A would feel compelled to mail out payment on or before March 18, 2017.

23. The 30-day validation period identified in Exhibit A would end at or around the same time the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in Exhibit A before it expires. *See* 15 U.S.C. § 1692g(a).

3

24. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for Afni to provide verification in time for the consumer to tender payment in acceptance.

25. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in Exhibit A expired and that Afni was not obligated to renew the offer would be unsure how, or whether, she could seek verification of the debt but accept the settlement offer if the debt could be verified.

26. The statement that a debt collector is "not obligated to renew" an offer tracks safe-harbor language that was created by the Seventh Circuit, which is meant to signal to the unsophisticated consumer that the offer may not *actually* expire on the expiration date because renewal of the offer is, at the very least, a possibility. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007).

27. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist. LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor

4

language where the Seventh Circuit expressly limited the reach of the language to different claims).

28. In the context of an initial settlement letter, the unsophisticated consumer, believing that the foregoing of validation rights is a material aspect of the settlement offer, would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away.

29. Exhibit A does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified.

30. The unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, might tender her payment to accept the settlement offer along with the notice of dispute.

31. The unsophisticated consumer would also not know whether or how she could receive her money back from Defendants if Defendants are unable to verify the debt or if the debt actually is not valid.

32. In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

33. Thus, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from seeking verification.

34. Moreover, Exhibit A is patently unclear to the unsophisticated consumer whether the debt is owed to "AT&T" or to "AT&T Mobility" because it states that the creditor is "AT&T

5

MOBILITY" but also instructs "victims of identity theft [to] follow the instructions above to dispute the debt, and, to further expedite resolution, AT&T requests that you contact them directly." Exhibit A.

35. AT&T Corp. and AT&T Mobility LLC are two distinct business entities.

36. Upon information and belief, the nature of AT&T Corp.'s business is telecommunications generally, whereas the nature of AT&T Mobility LLC's business is wireless and cellular phone services.

37. It is not uncommon for a consumer to have more than one "AT&T" account---one account for home telephone, internet, and television services and another, separate account for wireless or cellular phone services.

## *FDCPA Violations*

38. The settlement offer in Exhibit A is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

39. Because the settlement offer in Exhibit A expires at or around the same time as the validation period, there is an apparent contradiction between the settlement offer and the validation notice.

40. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

41. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

42. The plain language of Exhibit A is unclear as to how Afni would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

43. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, Afni might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

44. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

45. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

7

46. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

47. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

48. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

49. Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

50. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

51. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

52. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end

8

of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

53. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

54. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights. *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

55. Defendant did not include explanatory language in Exhibit A, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

56. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

57. Plaintiff was confused by Exhibit A.

58. The unsophisticated consumer would be confused by Exhibit A.

59. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

9

60. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action

10

for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63. 15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

65. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

11

66. 15 U.S.C. § 1692f generally prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

67. 15 U.S.C. § 1692g(a)(2) requires that the debt collector identify the name of the creditor to whom the debt is owed in a non-confusing manner. *Bartlett*, 128 F.3d at 500. *See also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (statutory disclosures must be made in a non-confusing way):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

68. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

69. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. The expiration dates listed for the settlement offers in Exhibit A conflict with and overshadow the debt validation notice, in that Exhibit A does not explain how the debt collector would proceed if the consumer attempted to request verification of the debt and accept the settlement offer if the debt could be verified. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

72. The expiration dates listed for the settlement offers in Exhibit A conflict with and overshadow the debt validation notice, in that the settlement offers require the consumer to tender payment during the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

73. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692g(b).

## COUNT II – FDCPA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Exhibit A contains false, deceptive, misleading, and confusing representations about the name of the creditor to whom the debt is owed. In some instances, Exhibit A states

13

that the debt is owed to AT&T Mobility but in other instances it states that the debt is owed to AT&T.

77. Defendant violated 15 U.S.C. §§ 1692g(a)(2).

## CLASS ALLEGATIONS

78. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 1, 2017 and January 1, 2018, inclusive, (e) that was not returned by the postal service.

79. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

80. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

81. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

82. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 1, 2018 **ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com